UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
DAVID KAY ELDRIDGE, RAY ELDRIDGE,   )
JR.,D. CHRIS ELDRIGE, as trustee,   )
not individually, of the C.         )
ELDRIDGE 1994 GST TRUST, PATRICIA   )   CIVIL ACTION NO.
K. SAMMONS, as trustee, not         )   08-11254-DPW
individually, of the P.K. SAMMONS   )
1994 GST TRUST, C. ELDRIDGE 1994    )
GST TRUST, P.K. SAMMONS 1994 GST    )
TRUST, and K'S MERCHANDISE MART,    )
INC.                                )
         Plaintiffs.                )
v.                                  )
                                    )
GORDON BROTHERS GROUP, LLC,         )
WILLIAM WEINSTEIN, FRANK MORTON,    )
                                    )
         Defendants.                )
```

MEMORANDUM AND ORDER
May 25, 2016

In a Memorandum and Order issued on March 18, 2016, I granted a motion for Rule 11 sanctions against the Plaintiffs in this case. *Eldridge* v. *Gordon Bros. Grp., LLC*, No. CV 08-11254-DPW, 2016 WL 1089226, at *29 (D. Mass. Mar. 18, 2016). Plaintiffs had, after a direct reminder of the strictures of Rule 11, filed a cross-motion for summary judgment, on bases without warrant in the law applicable in this case.[1] I ordered

---

[1] By Memorandum and Order dated August 4, 2011, *Eldridge* v. *Gordon Bros.*, 2011 WL 3439180 (D. Mass. Aug. 4, 2011), I granted partial summary judgment to the defendants and invited the parties to propose a method to bring the case to final judgment. The Defendants "then expressed a desire to file a motion for

the Plaintiffs to pay to Defendants the reasonable costs and expenses Defendants incurred in responding to Plaintiff's motion. Fed. R. Civ. P. 11(c). I directed that those costs were to include Defendants' cost of moving for sanctions, but, "[g]iven the duplicative nature of much in the cross-motions for summary judgment," only to include those "fees and costs that would not have been incurred but for Plaintiff's improvident decision to file its own motion for summary judgment." *Eldridge* at *29. Defendants have now submitted their application for fees and costs and I must address whether the amount sought is consistent with this prior order.

Defendants request $35,000 in sanctions. This figure is not intended to tally up and compensate for costs precisely, but rather to provide a rough estimate in line with my March 18, 2016 instructions. In presenting this figure, Defendants report

---

summary judgment on the remaining claims and I set a schedule for the motion." *Eldridge* v. *Gordon Bros.*, 2016 WL 1089226, at *9 (D. Mass. March 18, 2016). When plaintiffs belatedly moved for leave to file a cross-motion for summary judgment, I allowed the motion but cautioned that plaintiffs' counsel "is advised to consider the application of Fed. R. Civ. P. 11 to any such motion if the motion has no conceivable likelihood of success." *Id.* Despite this warning, plaintiffs' counsel filed a cross-motion for summary judgment. In my extensive Memorandum and Order dated March 18, 2016 disposing of the cross motions for summary judgment, I concluded that plaintiff's tit-for-tat motion for summary judgment pursued claims that had no conceivable likelihood of success because they "were not 'warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law, or for establishing new law.' Fed. R. Civ. P. 11(b)." *Id.* at *29.

that the four lawyers most heavily involved in this litigation billed $106,996 on relevant activities.  The invoices attached support Defendants' contention that only activity necessitated by Plaintiff's motion for summary judgment – such as drafting an opposition brief, responding to Plaintiff's Local Rule 56.1 statement of uncontested facts, and preparing a motion for sanctions – have been included.  The $106,996 sum excludes various compensable costs, such as the attorneys' fees of local counsel and other lawyers involved in the matter, the costs of paralegals and other support staff, and direct expenditures other than attorneys' billable time.

To be sure, the labor of Defendants' counsel was not purely cost without value to Defendants.  Because the cross-motions for summary judgment involved substantially overlapping issues, Plaintiff's motion for summary judgment afforded Defendants additional opportunities to present the same arguments (already well-developed for their own motion) to the court a second time; this provided Defendants an opportunity to double down argument of their contentions in the litigation.

Without attempting to quantify the amount of duplication, Defendants instead present the figure $35,000 as the sanction they seek.  There is admittedly no detailed justification for the exact sum.  This is roughly a two-thirds reduction from the fees charged by Defendants' four primary attorneys.

I find such estimation to be appropriate here, given my admonition to avoid duplicative costs. There is no precise way to disentangle fully the work relating to one motion for summary judgment or the other. False precision is illusory and largely beside the point in this setting, particularly given that Rule 11 is primarily meant to deter, not compensate. *CQ Int'l Co.* v. *Rochem Int'l, Inc., USA*, 659 F.3d 53, 62 (1st Cir. 2011). My review is necessarily qualitative, not quantitative, as a result.

Moreover, determining exactly how duplicative Defendants' work was would require a difficult counterfactual. As Plaintiff points out, many of the arguments raised in Plaintiff's summary judgment motion and then addressed in Defendants' opposition brief were also raised in Plaintiff's opposition brief. Defendants also filed a reply brief regarding their own motion. Defendants were required to do much of the same work to develop a reply brief on their own motion as they did to develop their brief in opposition to Plaintiffs' motion. Even a side-by-side comparison of the parties' submissions, therefore, cannot precisely identify what work was caused on a but-for basis by Plaintiff's improvident motion for summary judgment.

In this necessarily imprecise context, I find the $35,000 sanctions sought to be reasonable. Certain costs are owed as a matter of course. First, my previous order specifically allowed

4

for the recovery of costs associated with moving for sanctions. Those costs are less duplicative of Defendants' own motion for summary judgment, and a review of the invoices submitted shows a significant amount of time spent on the sanctions issue. Second, regardless of duplication, some amount of compensation is owed for the labor involved in responding separately to plaintiff's summary judgment motion.  For example, while the chance to respond to Plaintiff's 56.1 statement of facts offered Defendants meaningful litigation benefits, it was nevertheless time-consuming, especially given the need to marshal supporting evidence separately, as Defendants were required to do.  I find these two categories of fees and costs approximate, on their own, one-third of the attorneys' work.

The two summary judgment motions also involved slightly different substantive issues.  Defendants identify three arguments made in Plaintiff's memorandum in support of summary judgment that were not addressed in its own summary judgment motion:

> (1) a detailed break-out of how Plaintiff claimed that GBG erred in calculating the amount of the liquidating distribution to Plaintiff (*see* Pl.'s Br. at 3-7);
> (2) several different arguments – covering seven pages of the brief – for precluding the expert report of Jeffrey Szafran, GBG's accounting expert (*see id*. at 10-18); and
> (3) that Plaintiff had established as a matter of law, on the basis of undisputed fact, that GBG had mismanaged the furniture department of New K's Merchandise LLC with resulting damages in the amount of $1,137,789 (*see id*. at 18-22).

These arguments required some new material in Defendants' opposition briefing, although Defendants' opposition was not entirely novel even on these issues. For example, in responding to Plaintiff's claims concerning the mismanagement of the furniture department, Defendants identified facts concerning how the department was managed. These facts were not addressed in Defendants' own summary judgment briefing, which emphasized questions of law. But Defendant also restated its arguments that summary judgment had already been granted on all implied covenant claims, including the furniture mismanagement claims. Defendants' responses to the other two issues are similar: Defendant's opposition brief raised slightly different, but overlapping, arguments as compared to its briefing supporting summary judgment. Even so, it is clear that significant effort, beyond restating Defendants' own favored summary judgment arguments, was required to respond to the newly reframed arguments raised in Plaintiff's summary judgment motion.

In sum, I find $35,000 to be appropriate and in accordance with the basis for sanctions I outlined in my March 18, 2016 order. More fundamentally, this figure fairly furthers — and is sufficient but no more than necessary to advance — the purposes of deterrence which animate Rule 11.

Accordingly, I direct that Plaintiffs pay Defendants $35,000 as a sanction for the filing and maintenance of their belatedly announced, retaliatory, futile and vexatious cross-motion for summary judgment.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE